IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENZA PRESTI, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| ) | No. 18 C 1710 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| CHAD WOLF, Acting Secretary, ) | |
| U.S. Department of Homeland ) | |
| Security, ) | |
| ) | |
| *Defendant.* ) | |

**MEMORANDUM ORDER AND OPINION**

Vincenza Presti, an employee of United States Citizenship and Immigrations Services ("USCIS"), filed a complaint under 42 U.S.C. § 1983 against the Secretary of Homeland Security in which she alleges that USCIS discriminated against her on the basis of her national origin and in retaliation for her earlier Equal Employment Opportunity (EEO) activity by: (1) not promoting her in 2015, (2) giving her some negative feedback in a 2015 performance appraisal, and (3) demoting her in 2018. She also purports to make out a whistleblower claim and raises other miscellaneous grievances about the workplace. Defendant now moves for summary judgment on all counts. For the reasons set forth below, Defendant's Motion for Summary Judgment [72] is granted.

**BACKGROUND**

Unless otherwise indicated, the following facts are undisputed for purposes of this Motion.

Presti began her employment with USCIS in 2002 as an immigration information officer. (Dkt. 74 ¶ 1.) In 2004, she was selected for a term position as a district adjudications officer. (*Id.*; Def. Ex. 3 at p. 14.) That term appointment expired in 2008, after which Presti was not selected

1

for a permanent position. (Dkt. 74 ¶ 2.) Presti filed an EEO complaint in 2008, which resulted in a finding by the EEOC that USCIS had discriminated against her. (*Id.*; Pl. Ex. A-9.) Presti subsequently returned to USCIS in 2011 as a level-2 immigration services officer ("ISO-2"). (Dkt. 74 ¶ 2; Def. Ex. 3 at p. 19.) In 2013, she filed a second EEO complaint, which was resolved through mediation. (Dkt. 74 ¶ 6.)

USCIS has three levels of ISO positions, the most senior of which is an ISO-3. (*Id.* ¶ 3.) In 2015, USCIS posted a vacancy for an ISO-3 position in USCIS's Chicago office, and Presti applied. (*Id.* ¶ 7.) The posted position was open to internal candidates only. (*Id.*) Applicants for the position submitted resumes and responded to questionnaires in support of their applications. (*Id.*) USCIS's Human Resources Center in Burlington, Vermont conducted a preliminary review of all the applications and then sent a list of nine eligible candidates to the Chicago office. (*Id.* ¶¶ 7, 13.) Presti was one of those nine candidates. (*Id.* ¶ 13.) The Chicago office invited all nine eligible candidates to interview for the position, but only eight candidates chose to be interviewed. (Dkt. 85-1 at p. 60.) One of those eight candidates withdrew from consideration "shortly after the interview," leaving a total of seven candidates remaining for the position. (*Id.*)

USCIS determined who to hire for this position by calculating a final score for each applicant. (Dkt. 74 ¶ 8.) The final score consisted of two components: interview performance (55%) and references (45%). (*Id.*) The same three USCIS employees, Nick Milissis, Monica Toro, and William Connor, interviewed each of the applicants. (*Id.* ¶ 14.) At the time of the interview, Nick Milissis was aware of Presti's prior EEO activity, but William Connor was not. (Pl. Ex. B10 at pp. 185–86; P. Ex. 9 at pp. 179–180). No information in the record indicates whether Monica Toro was aware of Presti's prior activity at the time of Presti's interview. The panelists asked the same set of questions of all the applicants. (*Id.* ¶ 16.) These panelists all received un-scrubbed

resumes from each of the applicants. (*Id.* ¶ 15.) Each panelist scored each applicant on their answers to a list of pre-determined questions. (*Id.* ¶ 16.) If the panelists' scores were more than 15% apart for a given applicant, the panelists discussed their differences and adjusted scores based on consensus. (*Id.*) Presti received a score of 41.526 out of a possible 75.5 for the interview component of her application, placing her in fourth among the seven remaining applicants. (Def. Ex. 9 at p. 204; Def. Ex. 5 at p. 169).[1]

After the interview portion of the applicant process was over, USCIS solicited two references from the applicants. (Dkt. 74 ¶ 9.) Because the ISO-3 position is a supervisory position, USCIS sought references from the applicants' supervisors. (*Id.*) However, the hiring Standard Operating Procedures ("SOP") for this vacancy "were not as clear as it [sic] could have been regarding the need for both references to be individuals who had supervised the candidate." (Def. Ex. 4 at p. 161.) Four of the seven candidates, including Presti, did not provide two supervisory references. (Dkt. 74 ¶ 9.) Presti submitted one supervisory reference, Michelle Wong, and one co-worker reference, Hearold Lacy. (Pl. Resp. ¶ 9.) Michelle Wong gave Presti a 10 out of 20, noting that she thought Presti would benefit from more experience before becoming an ISO-3. (Dkt. 74 ¶ 10.)[2] Because Lacy was not a supervisor, management instead contacted Stacy Summers, one of Presti's supervisors, to provide a second reference. (*Id.* ¶ 11.) Summers gave Presti a 15 out of 20. (*Id.*)

Once USCIS combined the reference and interview scores, Presti received a total combined score of 83.18. (Def. Ex. 5 at p. 171.) USCIS eventually selected two applicants for ISO-3

---

[1] Presti denies that her application ranked fourth following the interviews, but she provides no citation to the record in support of this assertion. (Pl. Add'l Facts ¶ 2.) She states that "Plaintiff's scores were lowered after the interview was conducted" while others' were increased (*Id.*), but she provides no citation to demonstrate the accuracy of this statement. The only evidence in the record is that she ranked fourth out of seven following the interview portion of the application.

[2] Presti purports to deny the facts contained within this sentence, but she provides no citations to support her denial. Defendant's assertions of fact, by contrast, are supported by citations to the record.

positions, Thomas Powers and Shanita Tucker, whose scores were 102.68 and 91.85, respectively. (*Id.*) Thomas Cioppa, the District Director of the Chicago office, then chose to hire both Powers and Tucker for the open position on the basis that they received the highest scores in the application process. (Def. Ex. 5 at pp. 171–72.) Cioppa was aware that Presti is of Italian heritage. (Pl. Ex. B1 at pp. 4–6.)[3] Even if Presti had submitted a second supervisory reference of her choosing and received a 20 out of 20, her total score still would have been lower than both Tucker and Powers. (Def. Ex. 9 at p. 205.)[4] When asked who she would have submitted as her second supervisory reference if management had given her the opportunity, Presti testified that she did not know. (Def. Ex. 3 at p. 196.)

For purposes of her claims related to her non-selection for the ISO-3 positions, Presti names Tucker and Powers as her comparators. (Pl. Resp. ¶3.)[5] Tucker is a woman of "African and Latino origin" with previous EEO activity. (Pl. Ex. B15 at p. 223.) Tucker has worked in USCIS's Chicago field office since 2008. (*Id.* at p. 222.) Powers is a Caucasian male. (Def. Ex. 5 at p. 171.) It appears that Powers had no previous EEO activity. (Pl. Ex. B1 at p. 19.) Powers had extensive training and experience in immigration-related jobs, including years of service with another federal agency, experience with asylum adjudications, and service as a field intelligence officer. (Dkt. 74 ¶ 20; Def. Ex. 5 at p. 171–72.)

---

[3] Presti was born in Italy. (Def. Ex. 5 at p. 169.)
[4] Presti purports to deny the facts contained in this sentence but provides no citation to the record in support of her denial. She leaves the exhibit reference blank: "Plaintiff denies that she would have been 5th in place if coworkers had provided 20 out of 20 points for references since she scored the highest off the list of eligible candidate [sic] (94), and since manipulation of scoring occurred after the interview was complete. (Exhibit    )." (Pl. Resp. ¶ 12.) She provides no support for her assertion that her score was 94, not 83.18, nor does she provide support for the assertion that anyone's score was manipulated.
[5] Presti has made various statements about who she is naming as her comparators. Most recently, she named both Tucker and Powers as her compactors. Because Presti is pro se, the Court affords her the benefit of the doubt and assumes that she properly identified both Tucker and Powers as comparators.

4

USCIS gave Presti a Performance Plan Appraisal (PPA) every year during her time as an ISO. (Dkt. 74 ¶ 21.) In 2015, her first-line supervisor, Alejandra Dominguez, performed Presti's PPA and gave her a 4.5 out of 5, a score indicating that Presti had "achieved excellence." (Dkt. 74 ¶ 21.) In prior years, Presti's scores were 4.2, 4.3, 4.5, and 4.6. (*Id.*) Although Presti received an "achieved excellence" rating, she objected to the narrative section of the PPA in which Presti's supervisors noted that "it is recommended that ISO Presti continue to improve in applying the right tone to her email communications to management." (*Id.* ¶ 22.) Management asked Presti to "soften her approach" when communicating with management because some of her communications could be interpreted as "confrontational and demanding." (*Id.* ¶ 23; Def. Ex. 11 at p. 213.) Presti believes that these criticisms were really about her Italian heritage, to which she attributes her open and direct communication style. (Dkt. 74 ¶ 22.) Dominguez has never made any comments to Presti about her national heritage. (Def. Ex. 3 at p. 271.) Dominguez also noted that Presti was sometimes reluctant to assist co-workers with their assignments, and Dominguez asked Presti to be more receptive to assisting with the occasional reassignment. (Dkt. 74 ¶ 23.) Presti objected to the constructive criticism in the 2015 PPA, and management agreed to alter the narrative in the PPA to Presti's satisfaction. (*Id.* ¶ 24.)

In April 2018, USCIS promoted Presti to the position of Supervisory Immigration Services Officer (SISO). (Dkt. 74 ¶ 27.) As a new SISO, Presti was to serve a 12-month probationary period in order to assess her performance and her transition to a management position. (*Id.* ¶ 30.) Between April and June of 2018, Branch Chief Yolanda Vera served as Presti's supervisor. (*Id.* ¶ 29.) Vera issued a positive review of Presti's performance during those two months. (Pl. Ex. C3 at pp. 4–5.) Starting in June 2018, Presti reported to the new Branch Chief, Pauline Woodson. (Dkt. 74 ¶ 30.) Between June and September of 2018, Woodson grew dissatisfied with Presti's performance as a

SISO, and eventually sought Presti's demotion back to ISO. (Pl. Ex. C9; Dkt. 74 ¶ 33.) Specifically, Woodson noted that "Presti was excessively micromanaging her direct reports and needed to build better relationships with her subordinate employees." (Def. Ex. 27 at p. 1.) Woodson also noted that Presti, *inter alia*, "became combative in response to concerns raised by management about her progress as a supervisor," "mismanaged several mandamus cases," and "did not complete necessary work on her time sensitive assignment of responsibility for replying to Congressional inquiries on cases within the Adjudications Unit." (Def. Ex. 27 at pp. 5–6.) Woodson met with Presti in one-on-one meetings and provided her with feedback. (Pl. Add'l Facts ¶ 7.) Presti acknowledges that she had "issues with managing timely all databases related to attorney inquiries, Congressional inquiries, and mandamus case assignments all at once." (*Id.*) Woodson ultimately recommended to Field Office Director Medina that Presti be demoted. (*Id.* at p. 6.) Medina met with Presti on September 21, 2018 to notify her that she was being demoted back to her prior position as an ISO. (Dkt. 74 ¶ 33.) In Woodson's final PPA for Presti's performance as SISO dated October 31, 2018, Woodson gave Presti the lowest possible rating— "unacceptable"—in all categories. (Pl. Ex. A11.)

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of the non-moving party. *Anderson,* 477 U.S. at 255; *see also Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018). However, "'inferences that are supported only by speculation or conjecture will not defeat a summary judgment motion.'" *Herzog v. Graphic Packaging Intern., Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (quoting *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)).

## DISCUSSION

### I. National Origin & Retaliation Claims

Title VII forbids an employer from taking an adverse employment action against an individual on account of national origin or in retaliation against the individual's protected activity. 42 U.SC. § 2000e; *Naficy v. Ill. Dept. of Human Servs.*, 697 F.3d 504 (7th Cir. 2012). To determine whether a plaintiff has a viable discrimination or retaliation claim, this Court asks whether all the evidence, considered as a whole, would permit a reasonable factfinder to conclude that the plaintiff's national origin or her earlier protected activity caused her adverse employment actions. *See Ortiz v. Werner Enter.*, 834 F.3d 760, 765 (7th Cir. 2016). A plaintiff can make out a *prima facie* case for retaliation or discrimination by showing that (1) she is a member of a protected class, (2) she performed her job to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated individuals who were not members of her protected class more favorably. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). If a plaintiff successfully makes out a *prima facie* case of retaliation or national origin discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory, non-retaliatory reason for an adverse employment action. *Id*. If the defendant does

so, then the burden shifts back to the plaintiff to show that the employer's articulated reason is pretextual, "which in turn permits an inference of unlawful discrimination." *Id.*

To prove a causal connection between a plaintiff's national origin and an adverse employment action under 42 U.S.C. § 2000e-2(a), a plaintiff need only present evidence that "the motive to discriminate was one of the employer's motives, even if the employer had other, lawful motives that were causative in the employer's decision." *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). By contrast, establishing a causal connection between an adverse employment action and retaliation under 42 U.S.C. § 2000e-3(a) requires a plaintiff to show that her "protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 362.

An adverse employment action is "'some quantitative or qualitative change in the terms or conditions of employment that is more than a mere subjective preference.'" *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465 (7th Cir. 2018) (quoting *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). A demotion is a quintessential type of adverse employment action. *See, e.g.*, *Hicks v. Forest Preserve Dist. of Cook Cty.*, 677 F.3d 781 (7th Cir. 2012). The failure to promote is also an adverse employment action. *Volovsek v. Wis. Dept. of Agr., Trade, and Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003). A negative performance evaluation "does not in itself constitute an adverse employment action," but it may serve as evidence of discrimination or evidence of pretext to suggest that the defendant's articulated reasons for some other adverse employment action are false. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731 (7th Cir. 2006); *see also Grube v. Lau Indus.*, 257 F.3d 723, 729 (7th Cir. 2001) ("[U]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions.").

### A. 2015 Performance Plan Appraisal (PPA)

Presti's 2015 PPA cannot reasonably be described as negative. Indeed, she received an overall rating of "Achieved Excellence." Presti's sole objection to the PPA that Dominguez wrote is about some language used in the narrative section. Presti admits, however, that management amended the narrative to her satisfaction after she noted her disagreement with it. To the extent that Presti attempts to make out a claim for national origin discrimination or retaliation based on the PPA, the Court grants Defendant's Motion for Summary Judgment because there is no remaining dispute between the parties as to the PPA. Even if such a dispute existed, a negative performance evaluation does not in itself constitute an adverse employment action. Moreover, Presti provides no evidence that Dominguez's criticism of Presti's communication style was really pretext for animus against Italians.[6] The Court, however, does consider the PPA as possible circumstantial evidence in support of Plaintiff's other national origin discrimination claims.

### B. 2015 Non-Selection for the ISO-3 Position

Presti's non-selection for the ISO-3 position was an adverse employment action. The only question then about her non-selection for purposes of this Motion is whether, based on all the evidence presented to the Court, a reasonable jury could conclude that USCIS did not select her for the position because of her Italian heritage or her earlier EEO activity.

#### a. *National Origin Discrimination Claim*

In support of Presti's contention that USCIS's decision not to select her was motivated in part by discrimination against her Italian heritage, Presti presents the following evidence. First, several members of management, including the selecting officer, Thomas Cioppa, knew that she was of Italian origin because she had informed them of her heritage. Second, USCIS selected

---

[6] Indeed, Dominguez's affidavit does not indicate that she knew Presti was from Italy. (Pl. Ex. B14 at p. 211.)

individuals of non-Italian origin, Tucker and Powers, for this position. Third, Presti received constructive feedback in a PPA regarding the tone of her email communications to management. Presti believes, without citing any evidence, that management's distaste for her communication style contributed to her non-selection. Even supposing, *arguendo*, that USCIS did not select Presti for the promotion in part because of her communication style, Presti has failed to demonstrate why that is not a legitimate factor for the Agency to consider when making hiring decisions. The ISO-3 position requires strong communication skills; some individuals making hiring decisions thought hers could be improved. It was reasonable and lawful for them to consider this issue as part of their evaluation of her.

Even if the Court assumes that Presti has made out a *prima facie* case of discrimination, USCIS has provided legitimate, non-discriminatory reasons for hiring others instead of her; namely, that her reference and interview scores were lower than other qualified applicants. Moreover, to the extent that her scores were lower because of the reviewers' distaste for her communication style, Presti has failed to demonstrate that the criticisms of her communication skills were really a pretext for cultural animus or that such animus played any role in the selection process. Even assuming that her scores were lower because the hiring SOP did not accurately describe the need for two supervisory references, that mistake affected all applicants equally, regardless of their ethnicity or other protected status. The Court therefore grants summary judgment on the national origin discrimination count related to her non-selection for the ISO-3 position.

### b. Retaliation Claim

In support of her prima facie claim that retaliation was a but-for cause of her non-selection, Presti has demonstrated that she is a member of a protected class (someone with EEO activity),

she performed her job to her employer's expectation, as evidenced by her "achieved excellence" review, she suffered the adverse employment action of non-selection, and it appears that one of her comparators, Thomas Powers, had no previous EEO activity. She has therefore made out a *prima facie* case.

Although Presti adequately makes out a *prima facie* case, Defendant has articulated legitimate, non-retaliatory reasons for choosing others for the ISO-3 position. Presti only presents two pieces of evidence supported by citations to the record tending to support an inference of retaliation. First, she has filed EEO complaints against USCIS in that past. Second, USCIS employees with influence over her hiring were aware of her prior EEO activity.[7] Other evidence in the record points to non-retaliatory reasons for Presti's non-selection. For one, her combined interview and references score placed her well below the highest scoring candidates, both of whom were deemed eligible for the position by the Human Resources office in Vermont. Of course, Presti complains that USCIS did not make her aware that she needed to provide two supervisory references, which she claims negatively impacted her reference score. USCIS may have failed to communicate the need for supervisory references only, but there is no indication that Presti alone was the recipient of this poor communication; all candidates had access to the same hiring SOP regardless of their prior EEO activity. Even if she had the opportunity to provide another supervisory reference and even if that person had given her a perfect score, her total score still would have fallen below the other candidates because of her lower interview score. Presti infers that Nick Milissis's knowledge of her prior EEO activity must have biased him against her in the interview, but this is nothing but pure speculation. Indeed, Milissis signed an affidavit indicating

---

[7] Presti also repeatedly alleges that someone at USCIS manipulated her application scores downward while others had their scores raised. She provides no evidence for this assertion, so the Court does not consider that allegation for purposes of this motion.

that he thought Presti had a "good interview." (Pl. Ex. B10 at p. 188.) Presti's speculation, without more, is insufficient for this claim to survive the instant Motion. Based on the evidence before the Court, no reasonable jury could conclude that a retaliatory motive was a but-for cause of USCIS's decision not to select Presti for the ISO-3 position.

The Court therefore grants Defendant's Motion with respect to the retaliation claim related to Presti's non-selection for the ISO-3 position.

### C. 2018 Demotion

Presti's demotion from her position as SISO was another adverse employment action. The only question about that demotion for purposes of this Motion then is whether, based on all the evidence presented to the Court, a reasonable jury could conclude that USCIS demoted her because of her Italian heritage or her earlier EEO activity.

*a. National Origin Discrimination*

It is not clear whether Presti brings a national origin discrimination claim based on her demotion, but to the extent she does, her primary evidence is the same evidence she presents in support of her national origin claim for the 2015 non-selection; namely, she once received constructive feedback regarding her communication style. This is insufficient evidence for a reasonable jury to conclude that her demotion was motivated in part by discrimination against her on the basis of her Italian heritage.

*b. Retaliation*

Presti is unable to make out a *prima facie* case of retaliation for her demotion because she does not point to any similarly situated individuals who had no prior protected activity and retained a supervisory position. Assuming, however, that she has made out a *prima facie* claim, USCIS still had legitimate, non-retaliatory reasons for demoting her. Woodson documented a variety of

shortcomings in Presti's performance as SISO, including her mismanagement of mandamus cases and her failure to timely address Congressional inquiries. Woodson also thought that Presti excessively micromanaged and needed to improve her relationships with her subordinates. Presti even admits that she had trouble managing the workload. Additionally, prior to being demoted in 2018, but after filing three EEO complaints in 2008, 2013, and 2015, USCIS promoted her to the position of SISO. The intervening act of promoting her tends to suggest that her demotion was not retaliatory in nature. The years-long gap between her most recent EEO complaint and her demotion also attenuates an inference of causation. On this record, no reasonable jury could conclude that retaliation against her EEO activity was a but-for cause of Presti's demotion. The Court therefore grants Defendant's Motion for Summary Judgment on all claims related to Presti's 2018 demotion.

## II. Whistleblower Claim

Plaintiff brings a whistleblower retaliation claim under 5 U.S.C. § 2302(b)(8), stemming from four purported whistleblowing actions[8] she has taken over the course of her career at USCIS. Unlawful retaliation claims under the Whistleblower Protection Act must first be filed with the Office of Special Counsel. *Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913 (7th Cir. 2018) ("The Whistleblower Protection Act instructs a whistleblower to 'seek corrective action from the Special Counsel before seeking corrective action from the [Merit Systems Protection Board].'") (quoting 5 U.S.C. § 1214(a)(3)). Appeals from the Office of Special Counsel must be made with the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 1214(a). Any appeal from the MSPB in a case alleging whistleblower retaliation in violation of 5 U.S.C. § 2302(b)(8) must be made in the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1) ("[A] petition to review a final order or

---

[8] The alleged whistleblower actions are: informing the General Services Administration that a fire alarm did not work during an emergency evacuation, notifying the Office of Security and Integrity that her files had been mishandled, complaining to management about the need to evacuate the office due to a protest, and notifying management about an employee who she alleges manipulated a time entry sheet.

final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit."); *Richards v. Kiernan*, 461 F.3d 880, 886 (7th Cir. 2006) (noting that "any judicial review of a final decision by the MSPB lies with the . . . Federal Circuit, and not with the district courts"). Thus, this Court has no jurisdiction over the whistleblower claims and must dismiss them for lack of jurisdiction.

### III. "Additional Retaliatory Actions"

In Plaintiff's brief in opposition to the instant Motion, she raises several additional grievances against USCIS, ranging from the location of her office, to "delays in her requests for ergonomics," to certain trainings in which she was meant to participate being delayed. It appears that by listing these grievances, Presti is attempting to raise additional claims. She is not permitted to do so at this stage of the litigation, so the Court does not and cannot consider these additional claims. *See Clancy v. Office of Foreign Assets Control of U.S. Dept of Treasury*, 559 F.3d 595, 606–07 (7th Cir. 2009) (holding that the district court did not abuse its discretion by rejecting a claim because the plaintiff raised it for the first time in response to a motion for summary judgment).

## CONCLUSION

Presti has failed to meet her burden to establish that a reasonable jury could conclude that national origin discrimination or retaliation against her protected activity caused her non-selection for the ISO-3 position or her demotion. There is no genuine issue of material fact, and Defendant is entitled to judgment as a matter of law on these claims. The Court also lacks jurisdiction over Presti's whistleblowers claims, and Presti's other miscellaneous grievances are not properly before the Court at this stage of the litigation. The Court therefore grants Defendant's Motion for Summary Judgment. [72]

_____
Virginia M. Kendall
United States District Judge

Date: February 20, 2020